UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GMG TRANSWEST CORP.,

                    Plaintiff,                **REPORT AND**
                                                **RECOMMENDATION**
            -against-              CV 07-2548 (TCP)(ARL)

PDK LABS, INC., et al.,

                    Defendants.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

Before the court, on referral from District Judge Thomas C. Platt, is the defendants'

motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the

reasons set forth herein, the undersigned recommends that the motion be granted.

## BACKGROUND

The following facts are drawn from the plaintiffs' amended complaint and are presumed to

be true. All reasonable inferences are drawn in the plaintiffs' favor.

The plaintiff, GMG Transwest Corporation ("GMG"), is a freight transportation company,

which engages in interstate motor carrier, freight forwarding, and brokerage services in New

York. Am. Compl.at ¶ 1. Through April, 2007, GMG provided freight transportation and

accessorial services to defendant PDK Labs, Inc. ("PDK"), a New York pharmaceutical

manufacturer. *Id.* at ¶¶ 2, 11, 17. For these services, GMG asserts that it has not been fully paid,

and a balance of $235,280.00 remains. *Id.* at ¶ 18. According to the amended complaint, in 2006

and 2007, while GMG and PDK were doing business together, PDK began experiencing financial

difficulties and ultimately became insolvent. *Id.* at ¶¶ 12, 13. Allegedly at the direction of the co-

defendants, Michael Krasnoff, Donna Field, Reginald Spinello, Bradley Gross, Ricefield, LLC,

and OTC Associates, Inc, as PDK was winding down, substantial funds were transferred from PDK accounts to accounts held by the co-defendants. *Id.* at ¶ 15. From January, 2007 through March, 2007, checks totaling approximately $300,000.00 were issued from PDK to OTC Associates. *Id.* at ¶ 25. From January 5, 2007 through April 16, 2007, checks totaling $55,000.00 were issued to Gross, PDK's attorney, and to Gross in escrow. *Id.* at ¶¶ 8, 29. From December 1, 2006 through May 22, 2007, checks totaling $115,000.00 were issued to Krasnoff, a PKD shareholder, director, and/or officer. *Id.* at ¶¶ 5, 33. From November 30, 2006 through April 20, 2007, checks totaling $1,224,900.00 were issued to Field, a member of Ricefield and Krasnoff's wife. *Id.* at ¶¶ 7, 37.

The amended complaint asserts federal jurisdiction predicated on 28 U.S.C. §§1331 and 1337. The amended complaint lists ten counts including a count that seeks the $235,280.00 balance from PDK, a count that seeks to set aside the transfers of funds to the co-defendants as fraudulent conveyances, a count that seeks to pierce the corporate veil of PDK, OTC, and Ricefield and hold the individual shareholders of each company individually liable for PDK's contractual balance. The amended complaint also asserts claims based on a breach of fiduciary duty, and civil conspiracy.

On April 26, 2010, the defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction and 12(b)(6) for a failure to state a claim. For reasons discussed below, this court recommends dismissal of the complaint.

## DISCUSSION

### A.  Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When "considering a motion to dismiss under this subsection of Rule 12, the allegations of the complaint are construed in the plaintiff's favor.  However, once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction." *DeNuzzo v. Yale New Haven Hospital,* 2006 U.S. Dist. LEXIS 91448, * 5 (Dist. Conn. Dec. 19, 2006) (internal citations omitted).   In reaching its decision, the "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir. 1991), *vacated for reconsideration on other grounds,* 505 U.S. 1215 (1992), *reaff'd on remand,* 999 F.2d 33 (2d Cir. 1993).  It is with these standards in mind that the court addresses the defendants' arguments under this section of Rule 12.

GMG argues that subject matter jurisdiction over the GMG-PDK claims arises under 28 U.S.C. §§ 1331 and 1337.  Specifically, GMG argues that the amended complaint is a dispute of interstate commerce, and pursuant to *Thurston Motor Lines, Inc. v. Jordan K. Rand, LTD.*, 460 U.S. 533 (1983), federal question jurisdiction exists over a carrier's simple contract-collection action.  GMG also cites to various provisions under the Interstate Commerce Act, specifically 49 U.S.C. §§ 13701, 13706, 13708, and 13709 which govern requirements for reasonable rates, liability for payment of rates, billing and collection practices, and procedures for resolving claims.  Lastly, GMG cites to § 14101(b)(2), which addresses remedies for a breach of contract under the Interstate Commerce Act ("ICA").  It is through these statutes, GMG argues, that subject matter jurisdiction arises.  GMG's arguments, however, are without merit.

GMG's first argument cites to *Thurston*, a 1983 Supreme Court case, which plainly held

that subject matter jurisdiction exists over a claim by a carrier to recover an amount owed for services rendered. *Thurston Motor Lines, Inc.*, 460 U.S. at 534. GMG's reliance on *Thurston*, however, is misplaced. Prior to 1995, federal law required each motor carrier to file a tariff of its prices and conditions of carriage with the Interstate Commerce Commission. 49 U.S.C. § 10762(a)(1) (1994) (repealed 1995); *Cent. Transp. Intern. v. Sterling Seating, Inc.*, 356 F.Supp. 2d 786, 789 (E.D.Mich. 2005). Carriers were then bound to that tariff and could not charge a shipper any rate other than the one listed. 49 U.S.C. § 10735(a)(1) (1994) (repealed 1995). Additionally, carriers were prohibited from giving shippers any preferential treatment. 49 U.S.C. § 10761(a) (1994) (repealed 1995); *Cent. Transp. Intern.*, 356 F.Supp.2d at 789. It was the binding effect of the tariff that created the federal question under *Thurston*. *See Thurston Motor Lines, Inc.*, 460 U.S. at 534 (holding "The Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act.")

The Interstate Commerce Commission Termination Act of 1995 removed the tariff requirement for all motor carriers except those providing transportation in noncontiguous domestic trade or the movement of household goods. 49 U.S.C. § 13702(a). As *Thurston* was grounded upon the carrier's rights and duties stemming from a filed tariff, *Thurston* has no application where the carrier is not required to file a tariff for the transportation provided. *See On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc.*, 245 F.R.D. 213, 225 (E.D. Pa. 2007); *accord Cent. Transp. Intern.*, 356 F. Supp.2d at 790 (citing *Henslin v. Roaasti Trucking, Inc.*, 69 F.3d 995, 998 (9th Cir. 1995); *Transit Homes of America v. Homes of Legend, Inc.*, 173 F.Supp. 2d 1185, 1190 (N.D. Ala. 2001). Nowhere does GMG allege that it is seeking amounts due under

a filed tariff, and even if it had, the tariff would be of no legal effect. *See Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir.2000); *see also Cent. Transp. Intern.*, 356 F.Supp. 2d at 790. As GMG's claim against PDK does not arise out of a filed tariff, but instead arises solely on the basis of its contract with PDK, there is no federal question in this claim. *See On Track Transp., Inc.*, 245 F.R.D. at 225; *see also Cent. Transp. Intern.*, 356 F.Supp. 2d at 791; *Transit Homes of America*, 173 F.Supp. 2d at 1191.

GMG's second argument is that federal law, specifically 49 U.S.C. §§ 13701, 13706, 13708, and 13709, governs liability for payment of transportation charges as well as billing disputes, and procedures for resolving claims. GMG argues that its claims against PDK arise under these statutes, and thus jurisdiction is conferred by 28 U.S.C. § 1337.

This argument is also without merit. To invoke federal jurisdiction under § 1337, a complaint must state a claim arising under a federal act regulating commerce. *See Lehman v. Discovery Communications, Inc.*, 217 F.Supp. 2d 342, 388 (E.D.N.Y. 2002) (citing *Carlson v. Coca-Cola Co.*, 483 F.2d at 279-280 (9th Cir. 1973); *Zimmerman v. Conrail*, 550 F.Supp. 84, 85-86 (S.D.N.Y. 1982)). Section 1337 does not, however, confer federal subject matter jurisdiction when the federal statute regulating commerce is only tangentially related to the cause of action. *Zimmerman*, 550 F.Supp. at 86. "Facts must be alleged to show that federal law in the particular case creates a duty or remedy." *Russo v. Kirby*, 453 F.2d 548, 551 (2d Cir. 1971).

At the outset it should be noted that the amended complaint makes no reference to sections 13701, 13706, 13708, and 13709 as a basis for federal subject matter jurisdiction. A review of those sections plainly illustrates that they are unrelated to GMG's claims. Thus, section 13701 requires that carriers charge reasonable rates when (1) transporting household goods, (2)

transporting by or with a water carrier in noncontiguous domestic trade, or (3) when rates are made collectively by motor carriers under agreements approved pursuant to § 13703. 49 U.S.C. § 13701. GMG has alleged no facts that would satisfy any of the scenarios provided for in section 13701. Likewise, section 13706 is inapplicable as it governs the liability of a consignee. 49 U.S.C. § 13706. As PDK is the consignor of the goods and the consignee is not a party to this action, section 13706 has no bearing on this case. Additionally, section 13708 simply places a notice requirement on the carrier to disclose the actual rate, charges, or allowances for any transportation service when a document is presented for payment. While this section may govern GMG's behavior as a carrier, it does not provide a basis for PDK's alleged liability. Lastly, section 13709 provides a method for resolving claims brought by a carrier when the carrier is seeking to collect monies for transportation in addition to those originally billed and collected by the carrier. 49 U.S.C. § 13706. This option, however, is available to the person from whom the collection is being sought. *Id.* Absent PDK invoking this option, section 13706 has no bearing on the matter at hand.

GMG further urges that section 14101(b) creates a basis for subject matter jurisdiction because subsection (b)(1) permits carriers to enter into a contract with shippers to provide specified services under specified rates and conditions, and subsection (b)(2) states that "the exclusive remedy for any alleged breach of contract entered into under this subsection shall be an action in an appropriate State court or United States district court . . ." This argument is without merit.

It does not follow from section 14101(b)(1) that original jurisdiction is created in a federal district court under section 14101(b)(2) when a carrier sues a shipper for unpaid freight charges based upon a simple contract of carriage. *See Transit Homes of America*, 173 F.Supp. 2d at 1191-

92 (holding that § 14101(b) does not confer original jurisdiction). As the court noted in *Transit Homes*, cases addressing this issue are rare. Identical language, however, can be found in the former 49 U.S.C. § 10713(i)(2), which applied to contracts for rail service. That language "was interpreted as reflecting a Congressional intent to *reduce* federal involvement in the transportation industry by providing that matters of contract dispute between shipper and carrier are to be decided by courts of law rather than by the federal agency charged with enforcing the ICA." *Id.* (citing *Cleveland-Cliffs Iron Co. v. ICC*, 664 F.2d 568, 592 (6th Cir.1981)). Thus, reading section 14101(b)(2) to confer federal court jurisdiction over an ordinary contract claim would be contrary to Congress's unmistakable rolling back of federal involvement in carrier-shipper relationships. *Transit Homes*, 173 F.Supp. 2d at 1192. *See also Central Transport Intern. v. Sterling Seating, Inc.,* 356 F.Supp. 2d 786 (E.D. Mich.,2005.) (federal courts do not have original jurisdiction over an action brought for payment of unpaid freight services in the absence of a claim made pursuant to a filed tariff).

As there is no basis for subject matter jurisdiction under either 28 U.S.C. §§ 1331 or 1337, GMG's claims against PDK must be dismissed.

2. Claims against the co-defendants

GMG argues that subject matter jurisdiction over the claims against the co-defendants arises under § 1367(a) supplemental jurisdiction. GMG proposes that in the event the court dismisses the claims against PDK, it should nonetheless retain supplemental jurisdiction over the remaining state law claims against the co-defendants. This court, however, cannot avail itself of supplemental jurisdiction in the absence of federal claims providing original jurisdiction. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (the ability to retain supplemental jurisdiction requires that at some point during the pendency of the case, original

jurisdiction must have actually existed); *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 47 (S.D.N.Y. 1992) (holding "original jurisdiction" under § 1367(a) to mean jurisdiction in the first instance, which presupposes a viable lawsuit. Where a derivative suit brought in diversity is subject to dismissal for failure to join an indispensable, non-diverse party, supplemental jurisdiction is not available to join that non-diverse party because, under § 1367(a), the Court never had "original jurisdiction" over the derivative action). Since GMG's claims against PDK did not provide a basis for original subject matter jurisdiction, the state law claims against the co-defendants must be dismissed. Therefore, GMG's remaining state law claims must be dismissed for a lack of subject matter jurisdiction. Accordingly, this court recommends that the defendants' motion to dismiss be granted for lack of subject matter jurisdiction.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       August 12, 2010

                                    _____/s/_____
                                      Arlene R. Lindsay
                                      United States Magistrate Judge