UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GMG TRANSWEST CORP.,

                    Plaintiff,                MEMORANDUM & ORDER
                                                     07-CV-2548 (TCP) (ARL)

          -against-

PDK LABS, INC., MICHAEL B. KRASNOFF,
*individually and as an agent of PDK LABS, INC.*,
DONNA N. FIELD, *individually and as a member
of RICEFIELD, LLC*, REGINALD A. SPINELLO,
*individually and as an agent of PDK LABS, INC.*,
OTC ASSOCIATES, INC, and BRADLEY S.
GROSS, *individually and as an agent of PDK LABS
INC. and OTC ASSOCIATES, INC.*,

                    Defendants.
-------------------------------------------------------------------X
PLATT, District Judge.

       Before the Court is a Report and Recommendation ("R&R") by Magistrate Judge Arlene R. Lindsay in the above-named action. *See* attached Report and Recommendation (ECF No. 87).

       Magistrate Judge Lindsay filed her Report and Recommendation on August 12, 2010, recommending that Plaintiff's case be dismissed on subject-matter jurisdiction grounds. Pursuant to 28 U.S.C. § 636(b)(1), and Fed. R. Civ. P. 72, Magistrate Judge Lindsay gave the parties 14 days to file any objections. On August 26, 2010, 14-days later, GMG Transwest Corp ("GMG") timely objected to the R&R. (Letter Mem. Obj. R&R, ECF No. 88.)

       For the reasons discussed below, the Court **ADOPTS** Magistrate Judge Lindsay's recommendations that Plaintiff's suit be dismissed under Federal Rule 12(b)(1).

### *Facts*

       The Court presumes the parties' familiarity with the facts, which are set forth in detail in

1

Magistrate Judge Lindsay's R&R. (*See* R&R 1-2, ECF No. 87.)

***Discussion***

I. *Standard of Review*

Because Magistrate Judge Lindsay recommends that Plaintiff's case be dismissed on subject-matter jurisdiction grounds, the R&R concerns dispositive issues. With dispositive motions, Rule 72(b)(3) requires that this Court review *de novo* those parts of the Magistrate's R&R that were properly objected to. Fed. R. Civ. P. 72(b)(3) ("(3) Resolving Objections. The district judge must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010) ("As to a dispositive matter, any part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge *de novo*."). Thus, the Court, below, undertakes a *de novo* review.

II. *Rule 12(b)(1) Standard*

In a Rule 12(b)(1) motion to dismiss based on a lack of subject-matter jurisdiction, plaintiffs bear the burden of proving jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). After "[c]onstruing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Id.* (internal citations and quotation marks omitted).

"Whether a federal court possesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute are two questions that are easily, and often,

confused." *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 305-06 (2d Cir. 2003); *see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S. Ct. 692, 95 L. Ed. 912 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action."). The reason behind this confusion is that "[i]n federal question cases, the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim 'arises under' the same federal law that gives the plaintiff a cause of action." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Judge Friendly described the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal-question cases as a "lesson [that] has been taught as often in decision as it has been ignored in argument and dicta." *Fogel v. Chestnutt*, 668 F.2d 100, 106 (2d Cir. 1981), *cert. denied*, 459 U.S. 828, 103 S. Ct. 65, 74 L. Ed. 2d 66 (1982). In most cases, however, it "makes little practical difference" whether the dismissal is under Rule 12(b)(1) or 12(b)(6). *Nowak*, 81 F.3d at 1187. But there are two important distinctions: dismissal under Rule 12(b)(1) does not have a *res judicata* effect since it is not on the merits; and dismissal under Rule 12(b)(1) precludes supplemental jurisdiction. *Nowak*, 81 F.3d at 1187.

Here, most of the claims do not arise under a federal statute; the amended complaint asserts all state-law claims. One claim, though, allegedly arises under 49 U.S.C. § 13706—a federal statute. With the state-law claims, because Plaintiff is a freight transportation company that engages in interstate motor carrying, freight forwarding, and brokerage services in New York, it argues that jurisdiction is founded under 28 U.S.C. §§ 1331 and 1337.

3

III. *The Court Does Not Have Subject-Matter Jurisdiction under 28 U.S.C. § 1337 for a State-Law Breach of Contract*

Section 1337 grants jurisdiction to the federal district courts over actions arising under federal law regulating interstate commerce, including interstate carrier claims for freight charges:

> (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however*, that the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

28 U.S.C. § 1337(a) (emphasis in original).

Subject-matter jurisdiction over state-law contract-breach cases in the freight business no longer exists. Plaintiff relies on *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S. Ct. 1343, 75 L. Ed. 2d 260 (1983) as authorizing jurisdiction under § 1337. But *Thurston* was decided before Congress deregulated the motor-carriage industry. "In 1995 the Congress found that motor carriage had become a 'mature, highly competitive industry where competition disciplines rates far better than tariff filing and regulatory intervention,' and that rate regulation was no longer necessary except for '[two] specialized categories of trucking operations.' " *Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027, 1029 (D.C. Cir. 1998) (*quoting* S. Rep. No. 104-176, at 10 (1995)). Prior to 1995, the Interstate Commerce Commission ("ICC") required that carriers maintained tariffs on file with it. "During the period that carriers were required to maintain tariffs on file with the ICC, federal jurisdiction unquestionably was present under 28 U.S.C. § 1337 in cases in which a carrier sought to recover unpaid freight charges from a shipper due under a filed tariff." *Cent. Transp. Intern. v. Sterling Seating, Inc.*, 356 F. Supp. 2d 786, 789 (E.D. Mich. 2005)

4

(*citing Thurston Motor Lines*, 460 U.S. at 533-35). But today, as Magistrate Judge Lindsay correctly noted, *Thurston* has no applicability to claims for unpaid freight charges where the carrier was not required to file for a tariff. *See Cent. Transp. Intern.*, 356 F. Supp. 2d at 790 ("because the Supreme Court's decision in *Thurston* is grounded upon the theory that a carrier's right and duty to seek recovery of unpaid charges depended upon a filed tariff and the requirements of the ICA, that case has no application to a claim for unpaid freight charges where the carrier was not required to file a tariff for the transportation provided."); *Transit Homes of Am. v. Homes of Legend, Inc. (Transit Homes I)*, 173 F. Supp. 2d 1185, 1190 (N.D. Ala. 2001). Today, claims for the collection of freight charges are state claims, and do not automatically confer federal jurisdiction; jurisdiction exists for these claims only if a federally-required tariff is involved. *Mayflower Transit, LLC v. Interra Indus., LLC*, No. 07-CV-5963, 2008 WL 2559358, at *2 (D.N.J. June 26, 2008) ("carriers which are no longer required to file tariffs (those carriers who do not transport either household goods or goods to non-contiguous states and territories), can no longer bring cases in federal court invoking the filed tariff as the basis for subject matter jurisdiction under 28 U.S.C. § 1337."); *On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc.*, 245 F.R.D. 213, 225 (E.D. Pa. 2007) ("after 1995, an interstate motor carrier of freight seeking to recover amounts due from a shipper can predicate federal jurisdiction under § 1337 only upon a tariff filed with the STB for the transportation of household goods. Other than in this narrow situation, a carrier's action to recover amounts due from a shipper is simply a contract action." (internal citations omitted)); *United Capital Funding Corp. v. Aaron Indus., Inc.*, No. 05-CV-0402, 2005 WL 1217358, 1 (M.D. Fla. May 20, 2005) ("any federal cause of action for the collection of freight charges ceased to exist when the Interstate Commerce Commission, along with the regulation of freight tariffs, was eliminated."); *Cent. Transp. Intern.*,

356 F. Supp. 2d at 790 (denying subject-matter jurisdiction in a collections case from a commercial carrier that was not required to file tariffs under the ICCTA [Interstate Commerce Commission Termination Act of 1995] because "actions seeking amounts due under filed tariffs present a federal question, while actions seeking amounts due under a tariff that is not filed, do not."); *Transit Homes of Am. v. Homes of Legend, Inc. (Transit Homes II)*, 173 F. Supp. 2d 1192, 1196 (N.D. Ala. 2001) (denying subject-matter jurisdiction to a commercial carrier because, since the ICCTA, "the great majority of transportation of property by motor carrier in this country must . . . occur pursuant to the terms of private contracts."). Here, because Plaintiff has not alleged that it is seeking recovery under a filed tariff, its right to recover unpaid freight charges is not founded upon any federally-required tariff. Therefore, *Thurston* does not help Plaintiff.

Plaintiff, however, argues that Magistrate Judge Lindsay failed to follow *Old Dominion Freight Line v. Allou Distribs., Inc.*, 86 F. Supp. 2d 92 (E.D.N.Y. 2000), and that this Court should rely on that case in rejecting the R&R. In *Old Dominion*, the plaintiff filed an action to collect unpaid freight charges for provided transportation services. *Id.* The court in *Old Dominion*, relying on *Thurston*, denied the defendant's motion to dismiss. *Id.* at 93-94. But the case does not mention whether a federally-required tariff was involved in the carrier's claims. Since the case, decided in 2000, was likely based on conduct occurring subsequent to the effective date of the ICCTA, in order for federal jurisdiction to have existed, it must have concerned a required tariff. If it was not based upon a federally-required tariff, it was erroneously decided. Thus, to the extent that *Old Dominion* holds that jurisdiction still exists under § 1337 where a carrier seeks unpaid freight charges, and does not rely upon a filed tariff, the Court declines to follow it. Furthermore, although decided in 2000 after Congress deregulated the industry, *Old Dominion* relies on *Thurston*, which is a pre-

deregulation case. *See On Track Transp.*, 245 F.R.D. at 225 ("*Old Dominion* is unhelpful because, while it was decided in 2000, *after* Congress's deregulation of the industry, it relied for its holding on *Thurston*, the Supreme Court's *pre*-deregulation case. Moreover, *Old Dominion* made no distinction because actions that sought to recover on a filed tariff (to which § 1337 applies) and those that did not seek to recover on a filed tariff (to which § 1337 is inapplicable)." (emphasis in original)). Thus, to the extent that *Old Dominion* provides federal jurisdiction for carriers without federally-required tariffs, it will be disregarded.

    IV.    *The Court Does Not Have Subject-Matter Jurisdiction Under 49 U.S.C. § 14101*

Plaintiff also asserts that 49 U.S.C. § 14101 confers subject-matter jurisdiction on this Court. Plaintiff is incorrect. Section 14101 reads:

> (b) Contracts with shippers.
>
> (1) In general. A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies. The parties may not waive the provisions governing registration, insurance, or safety fitness.
>
> (2) Remedy for breach of contract. The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree.

49 U.S.C. § 14101. But this section does not confer jurisdiction over an otherwise run of the mill contract claim. *Transit Homes I*, 173 F. Supp. 2d at 1192. Rather, at the time the statute was passed,

Congress's intent was to reduce federal involvement within the industry. *Id.* ("[defendant's] suggestion that § 14101(b)(2) should be read to *confer* federal court jurisdiction over what would otherwise be an ordinary contract collection claim seems contrary to the purpose of the statute and the unmistakable recent course of Congress in generally rolling back federal involvement in carrier-shipper relationships." (emphasis in original)). The court in *Transit Homes I* looked at a similar statute, with identical language to § 14101, that controlled railway shipping—former 49 U.S.C. § 10713(i). *Id.* It went on to note that "when former 49 U.S.C. § 10713(i) was recodified at 49 U.S.C. § 10709(b)(2), it was made express that its language did *not* confer original jurisdiction under 28 U.S.C. § 1331 or § 1337." *Id.* (emphasis in original). The court thus held that § 14101(b)(2) did not confer federal jurisdiction over an ordinary contract claim. *Id.*; *see also Con-Way Transp. Servs., Inc. v. Auto Sports Unlimited, Inc.*, No. 04-CV-0570, 2007 WL 2875207, at *7 (W.D. Mich. Sept. 28, 2007) ("Under the post-deregulation statutory scheme, federal courts have concluded that a carrier's suit to collect unpaid charges for freight transportation services is a state law contract action under a shipping contract authorized by 49 U.S.C. § 14101(b) rather than a federal action under a filed tariff pursuant to 49 U.S.C. § 13702."). And on reconsideration, that same court, in *Transit Homes II*, aptly said: "Section 14101(a) does authorize the contract between [defendant] and [plaintiff]. But this authorization alone evidences little if any Congressional intent to federalize every breach-of-contract claim involving a motor carrier subject to federal regulation." *Transit Homes II*, 173 F. Supp. 2d at 1196. This Court finds these cases persuasive. Thus, the Court holds that it has no subject-matter jurisdiction over Plaintiff's claims under § 14101.

V. *The Court Does Not Have Subject-Matter Jurisdiction Under 49 U.S.C. § 13706*

In its opposition to Defendants' motion, GMG argues that its claims arose under certain

federal laws, specifically 49 U.S.C §§ 13701, 13706, 13708, and 13709. (Pl.'s Mem. L. Opp. 6, ECF No. 74.) Magistrate Judge Lindsay rejected GMG's arguments, finding that none of these sections were applicable. (R&R 5-6, ECF No. 87.) She first noted that the amended complaint makes no reference to any of these sections. (*Id.* at 5.) And specifically, Magistrate Judge Lindsay held that § 13706 was inapplicable to this case. (*Id.* at 6.) GMG only objected to Magistrate Judge Lindsay's findings on § 13706; GMG did not properly object to the findings on §§ 13701, 13708, and 13709. Thus, the Court only must review *de novo* Magistrate Judge Lindsay's findings on §13706; any objections as to the other sections are waived. *See Arista Records*, 604 F.3d at 116.

Plaintiff makes its § 13706 arguments under subsection (b). But this statute applies only to filed rates, *i.e.*, tariffs.[1] *S & B Transp., Inc. v. Allou Distribs., Inc.*, 41 F. Supp. 2d 388, 392 (E.D.N.Y. 1999) ("[Plaintiff] cites the court to 49 U.S.C. § 13706 as the basis for federal subject matter jurisdiction. That section addresses liability for payment of filed rates in actions involving a consignee (§ 13706(a)) or beneficial owner (§ 13706(b))."). Thus, since no tariff is involved in this case, § 13706 does not apply.

Even if this section was generally applicable (and not solely applicable to filed rates and tariffs), it would not help Plaintiff as liability would fall to the consignee—a nonparty, not PDK Labs, Inc. ("PDK"). To properly apply § 13706, both subsections, (a) and (b), must be applied in order. Section 13706 reads:

§ 13706. Liability for payment of rates

---

[1] *See, e.g., S. N. Eng. Tel. Co. v. Global NAPs Inc.*, No. 08-CV-4518, 2010 WL 3325962, at *2 (2d Cir. Aug. 25, 2010) ("Pursuant to the "*filed rate* doctrine," once its *tariff* is filed and approved . . ., a carrier may not charge a rate for a particular service different from that specified in the tariff . . . ." (emphasis supplied)).

9

(a) Liability of consignee. Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this section when the transportation is provided by motor carrier under this part. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property--

(1) of the agency and absence of beneficial title; and

(2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

(b) Liability of beneficial owner. When the consignee is liable only for rates billed at the time of delivery under subsection (a), the shipper or consignor, or, if the property is reconsigned or diverted, the beneficial owner is liable for those additional rates regardless of the bill of the lading or contract under which the property was transported. The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a notice of agency and the name and address of the beneficial owner. A consignee giving the carrier erroneous information about the identity of the beneficial owner of the property is liable for the additional rates.

49 U.S.C. § 13706.

To properly comprehend this section, certain terms must be defined. Various sections within Title 49 define relevant terms.[2] These terms include beneficial owner, consignor, consignee, and motor carrier:

(2) "beneficial owner" means a person not having title to property but having ownership rights in the property, including a trustee of

---

[2] The Court recognizes that certain definitions show up in different Chapters under Title 49.

> property in transit from an overseas place of origin that is domiciled
> or doing business in the United States, except that a carrier, agent of a
> carrier, broker, customs broker, freight forwarder, warehouser, or
> terminal operator is not a beneficial owner only because of providing
> or arranging for any part of the intermodal transportation of property.

49 U.S.C. § 5901; "(2) 'consignor' means the person named in a bill of lading as the person from whom the goods have been received for shipment," 49 U.S.C. § 80101; "(1) 'consignee' means the person named in a bill of lading as the person to whom the goods are to be delivered," 49 U.S.C. § 80101; and "(14) [] The term 'motor carrier' means a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13102. Further, *Black's Law Dictionary* defines a "shipper" as: "1. One who ships goods to another. 2. One who contracts with a carrier for the transportation of cargo.

- As a legal term of art, the shipper may not be the person who owns the cargo, but an agent or an independent contractor." *Black's Law Dictionary* (8th ed. 2004).

It is also important to define the parties themselves in order to correctly apply § 13706. In its objections, Plaintiff correctly claims that the consignee was Leiner Healthcare Products, Inc. ("Leiner")—which was originally a co-defendant. (Letter Mem. Obj. R&R, 4, ECF No. 88.) The "shipper or consignor" was Defendant PDK. And Plaintiff was a "motor carrier under this part."[3]

The two subsections in § 13706 are applied sequentially—only if the consignee is not liable for additional rates under (a), is (b) *then* looked to and applied.

Looking first at subsection (a): which party is liable for "additional rates" depends on whether the consignee has beneficial title in the property, or is "an agent only." When the consignee is the intended recipient and beneficial owner of the shipment, it is liable for rates billed at the time

---

[3] Defendants point out that Plaintiff appears to purposely dance around its proper title, as defined in Title 49, in the complaints, preferring ambiguity to being pigeonholed into one specific definition.

11

of delivery, as well as additional rates that may be found to be due after delivery. On the other hand, when the consignee is "an agent only," it is only "liable for the rates billed at the time of delivery for which the consignee is otherwise liable . . . ." In other words, when the consignee is "an agent only" it is not liable "for additional rates that may be found to be due after delivery," so long as written notice is given to the carrier prior to delivery. And in those cases, where the "consignee is liable only for rates billed at the time of delivery under subsection (a)"—meaning that the consignee was "an agent only"—then liability for those additional rates may shift to the shipper or consignor, the beneficial owner, or a consignee that has given the carrier erroneous information about the beneficial owner's identity under subsection (b).

Here, Defendant PDK shipped its product, using Plaintiff as the motor carrier, to a consignee other than itself—Leiner. Since Leiner is not a "consignee that is an agent only"—it was the purchaser of PDK's goods—it was liable for any "additional rates" under § 13706(a). Having found that Leiner—the consignee—was not only an agent, and thus was the party liable for any additional charges, contrary to Plaintiff's assertions, subsection (b) does not apply.

Leiner—the consignee—is not, however, a party to this action. While Leiner was named as a defendant in the original complaint, (*see* Compl., ECF No. 1), and in the "third-party" complaints (*see* Third-Party Compls., ECF Nos. 41, 42), it was not named as a defendant in the amended complaint, (*See* Am. Compl. ECF No. 57.[4]) Because " '[i]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect[,]' " *Dluhos v. Floating*

---

[4] The "amended complaint" is the final complaint filed by GMG. It took the parties from GMG's "third-party complaints" and added them to the defendants from main complaint. Notably, every party from the third-party complaints or main complaint was included in the amended complaint, except for Leiner. This demonstrates a deliberate decision to remove Leiner—the consignee—from

12

*and Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998) (*quoting Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)), Leiner is no longer a defendant in this case. Thus, Plaintiff's assertion—that the Magistrate should have found § 13706 liability because the consignee was a party—is wrong. Without the consignee as a party, § 13706's scheme cannot be followed. And here, as the consignee—Leiner—was the purchaser of PDK's goods, Leiner was not "an agent only," and therefore, Leiner would be the party liable under § 13706, not PDK. Plaintiff's attempt to gain jurisdiction over PDK under this section is thus rejected.

And finally, courts have held that § 13706 does not even provide for a federal cause of action under 28 U.S.C. § 1337. *See Mayflower Transit*, 2008 WL 2559358, at *1 n.1 ("Plaintiff alleges that this action arises under 49 U.S.C. §§ 13701, 13702, 13704, *13706*, and 14705. The only one of these statutory provisions that courts have found to create a cause of action under 28 U.S.C. § 1337 is 49 U.S.C. § 13702 . . . ." (emphasis supplied)); *see also Transit Homes II*, 173 F. Supp. 2d at 1199 (asserting that not all sections of the federal code create causes of action, specifically referring to 49 U.S.C. § 13707).

VI. *The Court Declines to Exercise Supplemental Jurisdiction*

Because the Court has held that there is no subject-matter jurisdiction, and there are no pending federal claims, there is no basis for subject-matter jurisdiction. "[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 69 (2d Cir. 2010); *One Communs. Corp v. JP Morgan SBIC LLC*, Nos. 09-CV-1815, 09-CV-2324, 2010 U.S. App. LEXIS 12386, at *14 (2d Cir. June 17, 2010). The Court thus declines to

the case.

exercise supplemental jurisdiction.

VII.  *No Federal Jurisdiction Exists Based on PDK's Counterclaim*

GMG appears to argue that federal jurisdiction may be saved because PDK's counterclaim is controlled by the Carmack Amendment—49 U.S.C. § 14706. (*See* Letter Mem. Obj. R&R 5, ECF No. 88.) The Court need not address whether the Carmack Amendment preempts PDK's counterclaim because federal subject-matter jurisdiction may not be predicated on a counterclaim. *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) ("Nor can federal jurisdiction rest upon an actual or anticipated counterclaim." (*quoting Vaden v. Discover Bank*, -- U.S. --, 129 S. Ct. 1262, 1272 173 L. Ed. 2d 206 (2009))). Rather, jurisdiction must be based on the plaintiff's complaint, allowing the plaintiff to decide whether to invoke or eschew federal jurisdiction. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831, 122 S. Ct. 1889, 153 L. Ed. 2d 13 (2002) ("Allowing a counterclaim to establish 'arising under' jurisdiction would also contravene the longstanding policies underlying our precedents.  First, since the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law, . . . to have the cause heard in state court.' " (*quoting Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S. Ct. 2425, 96 L. Ed. 2d 318(1987))). To the extent that GMG is simply trying to move to dismiss the counterclaim, it must bring a proper motion.[5]

VIII.  *Plaintiff May Not Replead*

Although leave to replead should be freely given, "a motion to amend should be denied if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive . . .,

---

[5] Although, as the parties points out, this "counterclaim" is pending in the Supreme Court of New York, Suffolk County, and not with the Federal District Court.

14

*repeated failure to cure deficiencies by amendments previously allowed,* undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." *Dluhos,* 162 F.3d at 69 (emphasis supplied) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Moreover, "[w]here a court would lack subject matter jurisdiction over the case as pleaded in the proposed amendment, the court may deny leave to amend on the ground of futility." *Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.,* No. 03-CV-10312, 2005 U.S. Dist. LEXIS 19788, at *13-14 (S.D.N.Y. Sept. 7, 2005); *see also Castillo v. Rice,* 581 F. Supp. 2d 468, 476 (S.D.N.Y. 2008). So far, Plaintiff has filed four separate complaints. Thus, because of Plaintiff's repeated failures to cure deficiencies, and because it would be futile to amend in light of the lack of subject-matter jurisdiction, Plaintiff may not replead in this Court.

## *Conclusion*

For the above cited reasons, the Court **ADOPTS** Magistrate Judge Lindsay's R&R. GMG Transwest's case is dismissed for a lack of subject-matter jurisdiction. As Magistrate Judge Lindsay did not pass upon the merits of any of Plaintiff's claims in her R&R, this Court did not need to do so either. Plaintiff may, in fact, have valid claims against Defendants. But this is not the proper forum to adjudicate them. Should Plaintiff meet New York State's requirements, the state courts may be that proper venue.

**SO ORDERED.**

Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
September 13, 2010

15